No. 21984.

JOHN THOMAS NOONEN *v.* BETTY LORENE NOONEN.
(443 P.2d 723)

Decided July 15, 1968.

EDWARD A. JERSIN, for plaintiff in error.

MASON, REULER & PEEK, ROBERT M. POVONDRA, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

BY this writ of error we are called upon to review an

order of the trial court modifying, by way of increasing, an earlier order relating to support money for three minor children. A brief recital of the facts is essential in order to place the controversy in its proper context.

On July 7, 1964 Betty Noonen was granted a decree in divorce from John Noonen. The divorce decree incorporated therein a rather comprehensive Property Settlement Agreement which had been agreed to by the parties. By this agreement John promised, among other things, to pay Betty the sum of $2,000, which sum "shall be as and for a settlement of the property, alimony, or any other rights that the plaintiff [Betty] may have in and to the estate or earnings of John Thomas Noonen."

Betty and John had three minor daughters, Michele, Julia and Liza, who at the time of the divorce proceedings were of the age of 15, 13 and 12 years respectively. The aforementioned Property Settlement Agreement provided that Betty should have the care, custody and control of the three children, with John to have reasonable rights of visitation.

As concerns support money, the agreement provided that John should deliver to Betty's attorney all monies then being held in a certain guardianship proceeding in the County Court of Adams County, with the further proviso that Betty's attorney should then deposit such funds in an escrow savings account to be thereafter disbursed to Betty as support for the minor children at the rate of $130 per month and continuing until such funds were exhausted. The agreement also provided that John should pay Betty the additional sum of $50 per month as support money until the funds in escrow savings were exhausted and that at such time John should then pay the total sum of $180 as support for his three children.

The agreement contained an additional provision to the effect that the trial court would retain jurisdiction of the matter for "any modification of the agreement as provided by the law."

On March 31, 1965 Betty filed a "Motion for Increase

in Support or, in the alternative, Lump-Sum Payment." In this motion Betty alleged that since the entry of the earlier support order there had been a general change in circumstances. She went on to allege in her motion that $180 was "woefully inadequate" for the needs of the three teen-age daughters and that there were then outstanding various and sundry medical and dental bills, all of which were unpaid and all of which had been incurred on behalf of the children. Betty then prayed for an increase in support for the benefit of the children, or, alternatively, a lump sum withdrawal from the escrow savings account.

This motion in due time came on for hearing, at which time and place both Betty and John testified at great length. It developed that though Betty was employed, she was nonetheless considerably in debt to her employer's credit union. Also, Betty had incurred some medical and surgical bills, which were also unpaid, when she herself had undergone a bi-lateral jaw resection.

As concerns John, the story is indeed a sad one. Suffice it to say that John for some time past has experienced numerous mental and physical problems, none of which was in any manner aided by his excessive use of alcohol. Shortly before the institution of the divorce proceedings, John by court order was temporarily confined to a hospital for observation and examination. Also, as was indicated above John was the subject of a guardianship proceeding instituted by his brother, wherein it was alleged that John was unable to manage his financial affairs.

The evidence disclosed that at the time of the divorce decree, as well as at the time of the hearing on the motion to increase support, John was unemployed and that his only source of income was from his father's estate. Shortly prior to these divorce proceedings John's father died, leaving an estate valued at roughly $450,000. Of this amount, John was to receive a 1/12th interest. Prior to the time of the divorce decree, John had re-

ceived about $19,000 from the estate. Of this sum approximately $8,500 was thought to be subject to the guardianship proceeding, with the balance of the $19,000 being unaccounted for and presumably squandered. Actually, it later developed that there was only about $5,600 in the guardianship proceeding and it was this amount which was placed in trust for the support of the children.

At the hearing on the motion to increase support, it was established that *subsequent* to the date when the divorce decree was entered, John received an additional sum of about $8,000 to $9,000 from his father's estate, to the end that as of the date of the hearing on the motion to increase support John then had in his possession bonds and securities valued at $7,500, plus a bank account of some $1,300. Also, as of the date of the divorce decree John had monthly car payments of $132 per month. Subsequently, this debt was extinguished to the end that as of the date of the hearing on the motion to increase support, John had a new automobile, free and clear, and hence he no longer had the obligation to pay $132 per month on his car.

The trial court made elaborate findings of fact, the gist of which was that there had indeed been a change of circumstances. As concerns the needs of the children, the trial court found, in effect, that support money in the amount of $180 per month was inadequate. Specifically, the trial court found that Betty was then in debt to the extent of some $2,200, all of which had been incurred for the care and maintenance of the minor children of the parties. As concerns John's sources of income, the trial court recognized that he was still unemployed and residing with his mother, but noted that he was no longer saddled with the monthly automobile payments referred to above. Also, the trial court emphasized that John had recently received from his father's estate the additional sum of slightly more than $8,000.

The trial court also made mention of the fact that

John had "dissipated" about $11,000 of the initial payment of $19,000 made to him from his father's estate and the trial court indicated that unless "protective" orders were entered John would in short time "dissipate" the approximate $8,800.

It was in this general setting that the trial court granted the motion to increase support and, after making detailed findings of fact along the lines indicated above, entered the following order:

1. that John pay from his own funds for the support of his minor children the sum of $125 per month, instead of the sum of $50 per month which he had theretofore been paying under the earlier order of court based on the agreement between the parties;

2. that John should forthwith pay to Betty the sum of $600, which sum was to be used to pay medical bills and other debts incurred by Betty on behalf of the minor children;

3. that the payment of $130 per month to Betty as support from the escrow savings fund should continue till the fund is spent; and

4. that John should forthwith deposit with the trial court $5,000 of the bonds and securities then in his possession, which securities were thereafter to be held by the court, subject to further order.

As concerns the impounding of the bonds and securities, the trial court went on to state that John could thereafter from time to time seek leave of court to withdraw the bonds, or a portion thereof, "for good cause shown," if the court is then satisfied that a proposed withdrawal would either be used for child support or for the purpose of enabling John to obtain gainful employment or conduct some form of business.

It is the aforementioned order which John now seeks to have reversed. John's basic theme as to why this order calling for increased support should be reversed in its entirety runs roughly as follows: the property settlement agreed to by the parties and incorporated into

the decree in divorce was as concerns the division of property a "final" order and the trial court could not thereafter through the guise of increasing support for the minor children collaterally attack and change such division of property. John's secondary theme is one with which we are frequently faced, namely that the trial court abused its discretion inasmuch as there is claimed to be no real change in circumstances.

 C.R.S. 1963, 46-2-4(4) provides that a trial court in a divorce proceeding shall retain jurisdiction of the action for the purpose of such later revisions of its orders pertaining to the care and support of minor children as changing circumstances may require. Furthermore, the Property Settlement Agreement between John and Betty expressly recognized this continuing jurisdiction of the trial court. Therefore, in the instant case the trial court very definitely had, and still has, continuing jurisdiction over the issue of support money for the three minor children of the parties. And the fact that the trial court by increasing the support order has perhaps compelled John to call upon some of his cash reserves does not mean that the trial court is thereby entering a second order redividing the property of John and Betty. The increased support called for by the trial court's order inures to the benefit of the children, not Betty. Hence, the argument that the trial court is redividing the property between John and Betty in violation of the agreement between the parties is untenable.

 Our view of the record convinces us that there was no abuse of discretion on the part of the trial court in directing John to increase his monthly support payment from $50 to $125 per month and to forthwith contribute $600 to be applied on the debts incurred on behalf of his children. We conclude that the record does establish a change of circumstances; but even if there were no change, as such, in the circumstances, in our view the trial court could still modify the support order here in question. This is so because the first support order

resulted solely from an agreement between the parties, and was not an order entered after contested hearing before the court. The parties cannot thus tie the hands of a court as concerns the issue of support for minor children. But in any event, the record before us amply supports the trial court's determination that $180 per month was inadequate support money, and that John, who then had in his possession some $8,000, should be called upon to at least partially ease the situation. There being no abuse of discretion, the order of the trial court as concerns support must be affirmed. *Engleman v. Engleman*, 145 Colo. 299, 358 P.2d 864.

■ One portion of the trial court's order, however, cannot be permitted to stand, at least in its present form. As noted, the trial court ordered John to deliver over to court bonds and securities then in his possession having a value of $5,000. The trial court indicated then that it would from time to time release to John these securities, or a portion thereof, if the trial court was convinced that such proposed expenditure would: (1) be used for child support or (2) enable John to obtain "gainful employment" or (3) enable John to engage in "some form of business for profit."

We recognize that C.R.S. 1963, 46-1-5(3) states that the court shall have the power to "require security . . . . to insure enforcement of its orders." However, the order here in question is apparently not intended to provide security, as such, to insure compliance by John with the order that he pay $125 per month as support. At least the order does not provide, for example, that in the event John should fail to pay the sum of $125 per month as support, such should be a charge on the securities then held by the Court. But, in any event, the order goes much further and places the court in the somewhat unenviable position of passing upon John's possible job opportunities and business chances. This, we hold, is not contemplated by the "security" provision contained in the aforementioned statute. Our holding in this regard

is in accord with the rationale of *Menor v. Menor,* 154 Colo. 475, 391 P.2d 473.

 Counsel also complains, at least mildly, about the fact that the trial judge elected to propound some question to John when he was on the witness stand. It is suggested that the trial judge by so doing abandoned his role of an impartial arbiter and by virtue of his "searching questions in the nature of grueling cross-examination" became an advocate. We do not so view the record. Certainly the trial judge in this sort of situation has the right to bring out by his own questions any information which he feels will be of assistance in resolving what in this case is a troublesome issue.

Accordingly, that portion of the judgment and order which directs John to deposit with the court bonds and securities in the value of $5,000 is reversed; the balance of the judgment is affirmed; all without prejudice to the continuing right of the trial court to enter a reasonable "security" order designed to insure enforcement of its orders, as permitted by C.R.S. 1963, 46-1-5 (3).

MR. JUSTICE PRINGLE and MR. JUSTICE KELLEY concur.